**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4130**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

JASON T. SCOTT,

    Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Peter J. Messitte, Senior District Judge.  (8:10-cr-00031-PJM-1)

_____

Argued:  May 17, 2013      Decided:  June 26, 2013

_____

Before KEENAN and FLOYD, Circuit Judges, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Marc Gregory Hall, HALL & CHO, PC, Rockville, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Jonathan Biran, Appellate Chief, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On July 18, 2011, a jury found Appellant Jason T. Scott guilty of eleven counts related to burglaries and home invasions that took place between September 2008 and June 2009. Scott appeals his convictions, arguing that (1) the district court erred in denying his motion to suppress evidence seized pursuant to a supplemental search warrant, (2) the district court should not have allowed a police officer to testify as an expert regarding how certain tools in Scott's possession related to burglary, and (3) the district court should have declared a mistrial because the government committed a discovery violation. Because we find that Scott's arguments lack merit, we affirm.

I.

On May 26, 2009, someone burglarized J.C. Arms, a federally licensed firearms dealer located in Carroll County, Maryland. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) conducted an investigation into the burglary, leading to several controlled purchases of stolen guns from Scott. As a result of these purchases, the ATF obtained a warrant to search Scott's home and car for firearms, documents related to the J.C. Arms burglary, proof that Scott lived at the residence, cell phones, tools to remove serial numbers from firearms, metallic fillings from firearms, money, and safes. During their initial search,

2

the agents saw ski masks, bullet-proof vests, flexicuffs, dark-colored clothing, various electronic devices, police scanners, financial statements, and other items such as gloves and binoculars. The ATF then obtained a supplemental search warrant allowing it to search Scott's home and car for these items. Scott was arrested thereafter and admitted that he committed twenty-eight residential burglaries, committed nine armed home invasion robberies, took photographs of a nude minor girl during one of the home invasions, and burglarized J.C. Arms.

A federal grand jury returned a superseding indictment charging Scott with eleven counts that arose from four armed home invasion robberies in Prince George's County, Maryland, and the burglary of J.C. Arms. The charged offenses included carjacking in violation of 18 U.S.C. § 2119 (Counts One, Three, and Five); use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Two, Four, Six, and Nine); theft of firearms in violation of 18 U.S.C. § 922(u) (Count Seven); sexual exploitation of a minor by production of a sexually explicit image in violation of 18 U.S.C. § 2251(a) (Count Eight); unlawful possession of a stolen weapon in violation of 18 U.S.C. § 922(j) (Count Ten); and unlawful possession of an unregistered silencer in violation of 26 U.S.C. § 5841 (Count Eleven). The J.C. Arms burglary formed the basis of Count Seven, and agents discovered the silencer and

stolen firearm that are the subjects of Counts Ten and Eleven when they searched Scott's home and car. We discuss the facts underlying the remaining counts below.

On September 23, 2008, April 3, 2009, and May 23, 2009, Scott and an accomplice broke into three houses and detained the occupants at gunpoint. During each home invasion, Scott and his accomplice stole a vehicle. These home invasions were the subjects of Counts One through Six. On June 13, 2009, Scott committed a fourth home invasion without an accomplice, targeting a seventeen-year-old girl whose photograph and telephone number he saw at the scene of the May 23 home invasion. After detaining the girl's family, Scott brandished a firearm, ordered the girl to undress, and placed a pillowcase over her head. He then touched her and forced her to pose while he used two cameras to photograph and videotape her. Agents seized objects that Scott had on his person when he appeared in the video, and his voice is audible during the recording. This home invasion was the subject of Counts Eight and Nine.

Prior to trial, Scott moved to suppress evidence seized from his home and car pursuant to the supplemental search warrant, averring that the affidavit supporting the warrant did not establish a sufficient nexus between his alleged criminal conduct and the items to be seized. The district court denied the motion on May 24, 2011. At trial, Scott objected to the

4

testimony of Prince George's County Police Sergeant Matthew Stauffer, who testified as an expert regarding how certain tools in Scott's possession could be used during burglaries and home invasions. Scott argued that Stauffer's testimony did not satisfy the requirements of Federal Rule of Evidence 702. The court overruled the objection. Scott ultimately moved for a mistrial, contending that the government committed a discovery violation when it failed to inform Scott about forensic information it recovered from a computer that it seized from Scott's home. The court denied the motion for a mistrial.

The jury found Scott guilty of all eleven counts, and the district court sentenced him to a total of 100 years' imprisonment. Scott now appeals, arguing that the district court (1) erred in denying his motion to suppress evidence seized pursuant to the supplemental search warrant, (2) abused its discretion in allowing Stauffer to testify as an expert regarding the relation of certain tools in Scott's possession to burglary, and (3) should have declared a mistrial due to the government's discovery violation. We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(1).

II.

We first consider Scott's argument that the district court erred in denying his motion to suppress evidence that the ATF

5

seized pursuant to the supplemental search warrant. Subject to certain exceptions that are not applicable in this case, police officers must obtain a warrant to conduct a search or seizure. See U.S. Const. amend IV; see also United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). The affidavit supporting the warrant that authorizes the search or seizure "must provide the magistrate with a substantial basis for determining the existence of probable cause" in light of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238-39 (1983). "[T]o establish probable cause, the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). This standard requires the supporting affidavit to make it clear to a reasonable person "that there is some nexus between the items to be seized and the criminal activity being investigated." Doe v. Broderick, 225 F.3d 440, 451 (4th Cir. 2000). On appeal, we give "[g]reat deference . . . [to] a magistrate's assessment of the facts when making a determination of probable cause." Williams, 974 F.2d at 481.

Scott contends that the affidavit accompanying the supplemental search warrant failed to establish the necessary link between the criminal activity at issue and the items the

6

ATF sought to seize.  Specifically, Scott argues that there is an insufficient connection between the crimes listed in the affidavit—possession and sale of stolen firearms in violation of 18 U.S.C. § 922(j), possession of firearms with obliterated serial numbers in violation of 18 U.S.C. § 922(k), and theft of firearms in violation of 18 U.S.C. § 922(u)—and the items identified in the affidavit:  "[c]lothing which can be used to commit burglaries," certain electronic devices, certain "[b]urglary tools," police frequency scanners, and "[f]inancial documents that are related to acquiring and disposing of proceeds from burglaries."  For the reasons we discuss below, Scott's argument lacks merit.

Contrary to Scott's assertions, the affidavit supporting the supplemental warrant contains several additional facts that justify the expanded scope of the warrant.  In particular, the affidavit explains that "a federal firearms licensee named J.C. Arms located in Woodbine, MD[,] was burglarized and . . . many of the firearms listed in [the original affidavit] were stolen from that location."  The affidavit also notes that the agents who searched Scott's residence and car saw various burglary tools in plain view when they executed the initial warrant. These facts identify Scott as a possible participant in the burglary of J.C. Arms.  Furthermore, the affidavit draws a

7

direct link between the items to be seized and burglary based on the affiant's experience:

> Your affiant knows from his training and experience, and from the training and experience of other ATF agents, that suspects who engage in burglaries of federal firearms licensees: wear protective clothing such as ski masks, bullet proof vests and dark clothing to hide their identity, use flexicuffs to restrain people found during the course of the burglaries to prevent their escape; use burglary tools, like those identified in Attachment B, to gain entry into locations; use binoculars to scope out locations; use videocameras to record various locations and use[] DVDs and other media to record the locations; use police scanners to detect the presence of law enforcement in the area.
>
> . . . Your affiant also knows from his training and experience, that suspects who engage in burglaries of federal firearms licensees often keep and generate records related to the planning and carrying out of burglaries on their computers, external hard drives, floppy disks, flash drives, and thumb drives in their residences where they can have regular access to them.

The Supreme Court has held that officers "may draw inferences based on [their] own experience in deciding whether probable cause exists," Ornelas v. United States, 517 U.S. 690, 700 (1996), and this Court has reached the same conclusion, see, e.g., United States v. Wellman, 663 F.3d 224, 229 (4th Cir. 2011). The agent who prepared the affidavits in this case detailed his experience investigating firearms-related crimes, including two years as an ATF agent. He could therefore rely on his experience to establish a link between the items to be seized and Scott's criminal activity. Accordingly, the district

8

court did not err in determining that the affidavit established the probable cause necessary to search Scott's home and car for burglary-related items.

                                    III.

Next, Scott contends that the district court should not have allowed Prince George's County Police Sergeant Matthew Stauffer to testify as an expert regarding the relation of certain tools that the ATF recovered from Scott's home and car to burglary. These items included bolt cutters, screwdrivers, a pry bar, a black cap and gloves, a ski mask, a hammer, binoculars, a flashlight, and a window punch. We review the district court's decision to allow expert testimony for abuse of discretion. See United States v. Dorsey, 45 F.3d 809, 812 (4th Cir. 1995).

Federal Rule of Evidence 702 outlines the requirements for expert testimony. As an initial matter, the court must ascertain that the "witness . . . is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Prior to his testimony regarding the burglary tools, Stauffer explained that he had served on the Prince George's County police force for fifteen years, investigated and supervised the investigation of more than 2,000 burglaries, made more than 100 arrests involving burglaries, and attended two

schools where he received training in identifying burglary tools. The government therefore established that Stauffer was qualified by his "knowledge, skill, experience, training, or education."

To determine whether a witness's testimony constitutes permissible expert testimony, a court must next determine whether the testimony meets four requirements. First, the court must find that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In this case, Stauffer's knowledge of burglary tools helped the jury understand how the assortment of items that the police recovered from Scott's home and car related to burglary. Second, "the testimony [must be] based on sufficient facts or data." Id. 702(b). This requirement is not in dispute in this case.

Third and fourth, "the testimony [must be] the product of reliable principles and methods" that "the expert has reliably applied . . . to the facts of the case." Id. 702(c)-(d). Scott argues that Stauffer's testimony did not satisfy these requirements because it was not "the product of reliable principles and methods." This Court has explained that, in the context of experiential expert testimony such as Stauffer's testimony, these prongs of Rule 702 require witnesses to

10

"explain how [their] experience leads to the conclusion reached, why [their] experience is a sufficient basis for the opinion, and how [their] experience is reliably applied to the facts." United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note) (internal quotation marks omitted). After explaining his qualifications, Stauffer answered "yes" when the government asked if, "[a]s part of [his] training and experience, [he] ha[d] . . . come to recognize the uses that can be made for tools in committing . . . robberies." The government then questioned Stauffer regarding each of the tools at issue, and Stauffer used his experience to explain how they related to burglary. Consequently, Stauffer's testimony comported with the third and fourth requirements for expert testimony, and the district court did not abuse its discretion in determining that Stauffer's testimony satisfied Rule 702.

Scott contends that this Court's decision in United States v. Johnson, 617 F.3d 286 (4th Cir. 2010), compels the opposite result. In Johnson, the Court determined that a Drug Enforcement Administration (DEA) agent's testimony was inadmissible under Rule 702 because "he provided virtually no methodology or guiding principles that would enable him to decode" the drug jargon that the DEA had intercepted via wiretaps. Id. at 294. The Court noted that "the phrases [the

agent] interpreted 'were not typical drug code' and 'did not have common meaning in the drug world.'" Id. at 295. However, no similar problem exists in this case; Stauffer simply testified regarding the common import that certain tools have in the burglary context. Johnson therefore does not alter our conclusion that the district court did not abuse its discretion in allowing Stauffer to testify as an expert.

IV.

Finally, Scott contends that the district court erred when it refused to declare a mistrial after it became aware that the government had committed a discovery violation. Specifically, Scott argues that the government erred when it failed to disclose a forensic report regarding his computer. Scott alleges that one of his accomplices created the explicit images that are the subjects of Count Eight and transferred them to the thumb drive on which the government found them. According to Scott, the forensic report could prove or disprove this theory because it likely shows whether the images in question passed through the computer that the ATF seized from Scott's home. Scott concedes that, if the images passed through his computer—which remained fixed in his home—his accomplices could not have transferred the images. Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E)(i), the government must permit the

12

defendant to inspect documents if they are "material to preparing the defense." However, in this case, Scott's attorney ultimately stipulated that he received the report in question, indicating that the government complied with Rule 16.

We recognize that the district court did not base its decision not to declare a mistrial on the fact that Scott's attorney received the report. Instead, the court simply found that Scott's decision not to examine the computer himself contributed to his lack of information as much as the government's "alleged non-production" did. However, even assuming for the sake of argument that the government committed a discovery violation, "we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980) (quoting Kotteakos v. United States, 328 U.S. 750, 756 (1946)). The evidence against Scott was overwhelming with respect to the sexual exploitation charge: he confessed to the crime, he appeared in the explicit video he recorded and is audible in that video, the authorities discovered the images in question in his residence, the thumb drive containing the images also contained Scott's homework assignments, and the camera contained photos of Scott's car and living room.

V.

For the foregoing reasons, we hold that (1) the district court did not err in denying Scott's motion to suppress evidence that the ATF seized pursuant to the supplemental warrant, (2) Sergeant Matthew Stauffer's testimony conformed with Federal Rule of Evidence 702, and (3) the district court did not err in denying Scott's motion for a mistrial. We therefore affirm Scott's conviction.

AFFIRMED