**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-4283**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

WILLIAM JON PATRIC EBERT,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:19-cr-00244-FDW-DSC-1)

_____

Argued: December 7, 2022                 Decided: March 3, 2023

_____

Before AGEE, DIAZ and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by published opinion. Judge Agee wrote the opinion in which Judge Diaz and Judge Quattlebaum joined.

_____

**ARGUED:** Samuel Bayness Winthrop, WINTHROP & GAINES MESSICK, PLLC, Statesville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

AGEE, Circuit Judge:

William Ebert appeals his conviction and sentence for one count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e), and one count of possession of pornography depicting a minor, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(1). He makes three arguments: (1) the district court erred in denying his motion to suppress evidence seized pursuant to a search warrant because the affidavit supporting the probable-cause finding consisted of stale evidence; (2) the district court abused its discretion in admitting certain video evidence depicting his victim after she turned eighteen and in admitting testimony of sexually suggestive conversations he had with another minor; and (3) the district court erred in imposing a five-level enhancement under § 4B1.5(b)(1) of the *United States Sentencing Commission Guidelines Manual* when calculating his recommended Guidelines range. Finding no error, we affirm the district court's judgment.

I.

In mid-2016, twenty-one-year-old H.H. contacted law enforcement in Ohio to report that when she was a minor, her father, Ebert, had taken sexually suggestive and explicit photographs of her. The later investigation revealed that Ebert's illicit activities began as the family moved from North Carolina to Ohio, but continued through the family's residency in Ohio and their move back to North Carolina until, several years later, H.H. turned eighteen. Because some of the relevant events occurred while H.H. was a minor in North Carolina, Ohio law enforcement brought North Carolina law enforcement into the investigation.

2

In September 2016, some three months after H.H. first reported her father to Ohio authorities, Special Agent Nathan Anderson of the North Carolina State Bureau of Investigation sought and obtained a search warrant for Ebert's North Carolina residence to seize computers and related digital-media storage devices to search for images and videos H.H. had described her father taking of her. With eleven years' experience in law enforcement investigations, Agent Anderson described in the affidavit supporting the warrant not just the events related to the investigation into H.H.'s allegations, but also information about the habits of individuals who create and possess child pornography and the ability of law enforcement to recover images stored on and deleted from digital media.

A subsequent search of materials seized from Ebert's residence identified numerous photos of H.H. taken over several years in various stages of undress. For example, in one photo set (multiple images taken at the same time), H.H. posed in increasing states of undress until she was completely naked; in several images, her vagina is the focal point. The materials also contained four videos that were made a few months after H.H. turned eighteen years old. In three of the videos, H.H. is wearing only her bra and underwear, and in the fourth, she is wearing shorts and a tank top. In two videos, Ebert is heard off camera directing H.H. to make certain poses and expressions, discussing the lighting for the images, and carrying on conversation with H.H. And in one of the videos, Ebert's image is reflected in the fireplace screen while he is holding the video camera.

In August 2019, a grand jury in the Western District of North Carolina returned an indictment charging Ebert with three offenses of which H.H. was the minor victim: knowing transportation of a minor across state lines with the intent to engage in sexual

3

activity, in violation of 18 U.S.C. § 2423(a) (Count 1); sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e) (Count 2); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 3).

Ebert moved to suppress the evidence seized pursuant to the search warrant, arguing that the affidavit did not support a probable-cause finding because the acts described in it occurred five-to-eight years earlier. He contended those acts were "stale" because they had not been updated with more recent evidence of criminal conduct. The magistrate judge's report and recommendation disagreed with Ebert, concluding that probable cause supported issuing the warrant given the nature of the allegations and the type of evidence to be seized. The district court adopted the magistrate judge's recommendation to deny Ebert's motion, observing that probable cause existed to support Ebert's possession of digital media containing evidence of sexual crimes involving a minor. The district court also adopted an alternative rationale for denying the motion that the magistrate had not addressed, concluding that suppression was unnecessary because even absent probable cause, the *Leon*[1] good-faith exception would apply.

---

[1] *United States v. Leon*, 468 U.S. 897, 922–26 (1984) (holding that when a warrant is "subsequently invalidated," suppression is not necessary so long as the warrant was issued by a neutral magistrate and the officers' reliance on the warrant was objectively reasonable).

At trial, H.H. was the Government's principal witness.[2] She testified to many sexually explicit conversations and photo sessions with Ebert that occurred for about seven years while she was a minor. It began during the family's move from North Carolina to Ohio, when Ebert explained to then eleven-year-old H.H. how to masturbate and encouraged her to do so at their next rest stop. When she didn't do as he asked, Ebert continued to discuss the topic and to encourage her to experiment. Over the next few years, Ebert often asked H.H. about her masturbatory experiences, urging her to describe them in "as much detail as possible." J.A. 239. At times, Ebert told H.H. that her descriptions had given him an erection.

On top of these sexually explicit conversations, Ebert also began photographing H.H. Sometimes H.H. was fully clothed or wearing underwear, and Ebert would direct her to pose provocatively. Over time, however, he began taking nude photos of her. *E.g.*, J.A. 241 ("[H]e wanted to start taking photo shoots with me, and it started out with clothing on, you know, like a skirt and hiking it up. And then over time, he had me just wearing underwear and then fully nude."). H.H. identified the photograph set described earlier in which she was nude and her vagina was a focal point as one example of photographs Ebert took in their North Carolina residence when she was 16 years old. She also testified that after taking these photographs, they would review and discuss them together on Ebert's computer. More than once during these sessions, Ebert would tell H.H. that their

---

[2] When a defendant appeals his conviction following a jury trial, we recount the relevant facts in the light most favorable to the Government. *See United States v. Bush*, 944 F.3d 189, 191 n.1 (4th Cir. 2019).

photograph sessions and conversations were "making him excited, and he would be erect. And then after a while, he would end up saying he had to go to the bathroom and, in his words, he needed to jack off because it was too stimulating for him." J.A. 245.

H.H. also testified that Ebert later added "more activities to do together" by coming up with "different ways of getting [her] to be nude in the room with him." J.A. 241, 243. For example, he'd have her undress and put a blanket over her, which he'd then remove for "a few moments" and have her describe her anxiety and comfort level, claiming that he wanted to increase her confidence. J.A. 243. Ebert also encouraged H.H. to videotape herself masturbating, which H.H. said she did once but tried to delete immediately afterward. Sometimes Ebert would "put his hands on [H.H.'s] breasts as he prayed" "for [her] boobs to grow bigger," J.A. 266, and other times he'd shave her pubic hair. If Ebert got an erection during these "activities," J.A. 241, he'd "pull his pant leg to the side so that [H.H.] could see [it] through his jeans," J.A. 266–67. Though Ebert repeatedly asked H.H. if she wanted to see or touch his penis, she refused to do so.

Over Ebert's objection, H.H. described two videos, similar to those described previously, that were introduced into evidence that depicted her after she'd turned eighteen years old. She identified Ebert's voice and image in the video, and explained the culmination of his many years of grooming behavior:

> At this point, it had been about seven years of taking pictures, so I felt like I was just in a very familiar routine. . . . I had a relationship where doing these photo shoots made my dad happier and nicer towards me and [he would] give me more attention just as his child. So I – I followed instructions to be more proactive and more – have a positive attitude when we did all of his challenges.

6

J.A. 274–75.

H.H. also testified that when the family lived in Ohio, she'd befriended another girl, then-minor Z.N., who for a time attended Ebert's home church and dated one of H.H.'s brothers. Ebert encouraged the two girls to "open up" and have "a sexual relationship" together. J.A. 266. They did not do so, but Ebert had many conversations in person and over Skype with H.H. about that possibility.

Over Ebert's objection, Z.N. also testified at trial, detailing her interactions with Ebert while she was a minor and corroborating aspects of H.H.'s testimony. For instance, Z.N. testified that for about three years, she and Ebert communicated in person or online via Skype "[a]lmost daily." J.A. 378. Ebert would "encourage [her] to discover [her] body and teach [her], instruct [her] on how to masturbate," J.A. 378, asking her to describe her experiences to him. Z.N. also testified that he wanted her to take close-up photographs of herself and, in particular, of her "privates." J.A. 378. And he "asked [Z.N.] if [she]'d be willing to film the video with his daughter of [them] masturbating with each other." J.A. 379. In another Skype conversation, Ebert encouraged Z.N. to make a "potion" that would "make [her] breasts larger." J.A. 386–87. Because Ebert and Z.N. spoke so frequently and explicitly over Skype, Ebert would ask Z.N. "to bring [her] laptop [to his home] so that he could wipe the information that was on Skype," which she did. J.A. 382.

The jury found Ebert not guilty of Count 1 (transportation of a minor), but it convicted him of Count 2 (sexual exploitation of a minor) and Count 3 (possession of child pornography).

At sentencing, the district court overruled Ebert's objection to the inclusion of a five-level offense enhancement under § 4B1.5(b)(1) of the Guidelines, which applies to certain convictions based on a finding that "the defendant engaged in a pattern of activity involving prohibited sexual conduct." Given that ruling and the uncontested parts of the Guidelines calculation, Ebert's total offense level was 39, which when combined with a criminal history category of I, yielded a recommended Guidelines range of 262 to 327 months' imprisonment. After argument on the 18 U.S.C. § 3553(a) factors and hearing from members of Ebert's family and Ebert himself, the district court sentenced Ebert to 300 months' imprisonment for the sexual-exploitation conviction and 120 months' imprisonment for the child-pornography conviction, to run concurrently.

Ebert noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

### A.

Ebert first challenges the denial of his motion to suppress, arguing that probable cause did not support issuing the search warrant for his North Carolina residence because the evidence of the charged crimes was stale.

We review de novo the district court's denial of Ebert's motion. *United States v. Wellman*, 663 F.3d 224, 228 (4th Cir. 2011).

This issue does not require an extended analysis because it fails for two reasons, either of which is independently sufficient. Namely, the district court did not err in its

8

probable-cause determination and, even assuming error, Ebert has waived any challenge to the district court's determination that the *Leon* good-faith exception applies.

First, the district court appropriately concluded that probable cause existed given the nature of the allegations and the type of evidence that was the object of the search.

"[E]vidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial[.]" *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). Consequently, part of a court's assessment of probable cause must consider whether the facts supporting it are "so closely related to the time of the issu[ance] of the warrant as to justify a finding of probable cause at that time." *Id.* at 1335–36 (citation omitted). While "time is a crucial element," *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010) (quoting *McCall*, 740 F.2d at 1335), "the existence of probable cause cannot be determined 'by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit,'" *id.* (quoting *McCall*, 740 F.2d at 1336). Instead, the Court "look[s] to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.* (quoting *McCall*, 740 F.2d at 1336).

Here, Agent Anderson's affidavit provided probable cause to issue the search warrant, and that probable cause was not stale.[3] Our prior cases have recognized that the staleness inquiry is somewhat different when the alleged unlawful activity involves digital images depicting child pornography and other sex crimes against minors, in part because

---

[3] Because Ebert challenges only the "staleness" of the probable cause, we do not address any broader inquiry.

the nature of the property to be seized is not a consumable, like narcotics. *E.g.*, *id.* (discussing the different staleness inquiry applicable in cases involving images of sex offenses against children). Instead, such child pornography is found on computers and other digital equipment that can be readily stored by offenders for years and also can be retrieved during a digital search even after its ostensible deletion. *Id.* at 370–71. In addition, law-enforcement experience supports the conclusion that individuals who possess such images "rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes." *Id.* (cleaned up) (citing cases).

Based on these factors, the district court properly concluded that the specific allegations against Ebert gave rise to a "fair probability that evidence of a crime w[ould] be found" at Ebert's residence. *Wellman*, 663 F.3d at 228. Therefore, probable cause existed to support issuing the search warrant, and the district court did not err in denying the motion to suppress on this ground.

Second, regardless of the existence of probable cause, the district court separately determined that it was also appropriate to deny Ebert's motion because the *Leon* good-faith exception applied. The *Leon* good-faith exception provides that evidence need not be suppressed when the record shows that law enforcement "relied in good faith on the issued search warrant" even if the warrant application were not adequately supported by probable cause. *Id.* (citing *Leon*, 468 U.S. at 926). This ground is a separate and independently sufficient basis for denying a motion to suppress. *E.g.*, *id.* (reiterating that probable cause and the *Leon* good-faith analysis are two separate bases upon which to deny a motion to suppress and, on appeal, to affirm the denial of such a motion). Ebert has not challenged

10

the district court's conclusion that this exception applies on appeal. Thus, he has waived appellate review of that separate ground for denying his motion, and we also affirm on that basis. *See United States v. Winfield*, 665 F.3d 107, 111 n.4 (4th Cir. 2012) (concluding that an argument not raised in the opening brief is waived); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring the argument section of a brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

For both reasons, we reject Ebert's argument that the district court committed reversible error in denying his motion to suppress.

## B.

Ebert next challenges the district court's evidentiary rulings that allowed the Government to introduce two videos of H.H. that were taken after she turned eighteen years old and the testimony of Z.N.[4] He argues the challenged evidence should have been inadmissible under Federal Rules of Evidence 403 and 404(b) because it was more prejudicial than probative evidence of "other" bad acts.[5] For example, he asserts that the

---

[4] Although Ebert refers in passing to the admission of Z.N.'s testimony as a whole, he develops an argument only as to Z.N.'s testimony relating to Ebert encouraging her to engage in sexual activities with H.H. and instructing her on how to make a potion to increase the size of her breasts. Under our appellate rules, *see* Fed. R. App. P. 28(a)(8)(A), he has likely raised only the narrower issue on appeal; regardless, our analysis would be unchanged.

[5] Ebert also challenges this evidence as being improperly admitted under Rule 414. Although this rule was discussed at various points as the parties contested whether it could be admitted, our review of the record confirms that the district court did not admit any
(Continued)

11

videos were not proof of the charged offenses, which had to have occurred when H.H. was a minor. And he contends their admission likely caused the jury to convict him on the incorrect belief that Ebert had a "propensity for taking lewd photographs of his daughter[]," something that would be viewed as "salacious, odd, and to most, creepy." Opening Br. 38–39. As for Z.N.'s testimony, Ebert asserts this evidence was unduly prejudicial because it could give the jury a reason to "dislike him" and to believe he had a propensity for "unusual[] and even creepy" conversations, which may improperly distract the jury from basing its verdict on the probative evidence. Opening Br. 41.

We review the district court's admission of evidence for abuse of discretion. *United States v. Lighty*, 616 F.3d 321, 351 (4th Cir. 2010).

We have reviewed the challenged evidence and conclude that the district court did not abuse its discretion in admitting it. Several grounds support our conclusion. While we find that the court did not err in allowing the admission of this evidence, we also note its limiting instructions appropriately curbed the risk that the jury would misuse the evidence in the way Ebert suggests. And even if both those grounds were faulty, viewing the record as a whole, any error was harmless.

To first address admissibility: the videos of H.H. are more correctly understood as being "inextricably intertwined" with the charged conduct rather than Rule 404(b) extrinsic-acts evidence. *Id.* at 352 (citation omitted); Fed. R. Evid. 404(b) ("Evidence of

---

evidence under it. Nor did the court instruct the jury on Rule 414. Accordingly, this argument has no basis.

any *other* crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." (emphasis added)). Acts are "inextricably intertwined with [] evidence regarding the charged offense if [they] form[] an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Lighty*, 616 F.3d at 352 (citation omitted); *see United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (describing "intrinsic" evidence as what is necessary "to provide context relevant to the criminal charges"). Here, the videos documented Ebert's relationship with H.H. mere months after she turned eighteen. They depicted the same sort of conduct that H.H. testified had recurred over the prior seven years when she was a minor, in which Ebert directed her to pose and dress (or undress) in various ways so that he could photograph her. And her testimony alongside the videos recounted the dynamic between father and daughter in which the father groomed his victim for his own sexual purposes. As a result, the videos provide direct context to the charged offense and are an "integral and natural part" of Ebert's grooming his minor daughter. *Lighty*, 616 F.3d at 352 (citation omitted). Because the videos were admissible as inextricably intertwined with the charged conduct, Rule 404(b), which applies only to *extrinsic* acts, is irrelevant and inapplicable.

Turning to Z.N.'s testimony, this evidence was properly admitted under Rule 404(b), which "is an inclusionary rule, allowing evidence of other crimes or acts to be admitted, except that which tends to prove *only* criminal disposition." *Id.* (emphasis added). Such evidence is admissible for other purposes, including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity,  absence of mistake, or lack of accident."

Fed. R. Evid. 404(b)(2). Here, the district court did not violate Rule 404(b) when it allowed the admission of Z.N.'s testimony because it was relevant for several permissible purposes, including establishing the absence of mistake or accident as well as showing Ebert's intent in pursuing photographs of minors for personal sexual arousal. In addition, Z.N.'s testimony corroborated parts of H.H.'s testimony, which also addressed Ebert's desire for the two minors to engage in sexual acts together and to record themselves doing so for him.

With regard to both the videos and Z.N.'s testimony, the district court did not abuse its discretion in admitting this evidence under Rule 403's balancing test, which permits exclusion of otherwise-admissible evidence when its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The evidence involved similar conduct in roughly the same timeframe as the charged conduct and, critically, "did not involve conduct any more sensational or disturbing than the crimes with which [Ebert] was charged." *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995). Accordingly, the court did not abuse its discretion in ruling that it was admissible. *See id.* (holding district court did not abuse its discretion under Rule 403 when the challenged Rule 404(b) evidence was "far less prejudicial" than the evidence directly bearing on defendant's culpability for the charged offenses).

Further supporting our conclusion is the district court's care in providing multiple limiting instructions guiding the jury as to the permissible uses of the challenged evidence. Generally speaking, cautionary instructions will "cure[] any unfair prejudice except in the most extraordinary circumstances." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir.

14

1996). Here, the district court gave two limiting instructions relating to H.H.'s and Z.N.'s testimony. During H.H.'s testimony, for example, the court cautioned the jury that the Government was introducing evidence beyond the scope of the three charged offenses that could be used only "to consider whether the defendant had planning and preparation to commit the actual acts he's charged with, or whether he had intent, a long-term intent . . . to have a certain relationship with his daughter and that intent would lead – would suggest to you that he had interests in committing the . . . three charged acts." J.A. 255. The court reiterated that the jury "cannot convict [Ebert] of any of those three counts because he allegedly committed some other acts over here on the other side," J.A. 255, elaborating at some length as to the jury's duty not to "short-circuit" finding evidence to support each element of the charged offenses, J.A. 256.

The district court gave another cautionary instruction just before Z.N. testified, reminding the jury that evidence of other acts did not constitute evidence "of the three charges against [Ebert]. It can only be used . . . for those issues of intent, planning or preparation." J.A. 370. Further, the court reminded the jury again that the Government bore the burden of proving every element of the charged offenses, and that evidence outside that scope could not satisfy that burden.

These cautionary instructions, which we can assume the jury obeyed given no proof to the contrary, decreased—if not eliminated—any risk of unfair prejudice from the admission of the challenged evidence. *See United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980) (stating that the risk of unfair prejudice in admitting evidence "can be generally

15

obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt").

Lastly, without detailing the extensive record evidence against Ebert, we observe that any error in admitting the challenged evidence was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); Fed. R. Evid. 103(a) (stating that evidentiary errors require reversal only if they "affect[] a substantial right"). "Erroneously admitted evidence is harmless if a reviewing court is able to say, with fair assurance, after pondering all that happened without stripping erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009) (internal quotation marks omitted) (citation omitted). It beggars belief to suggest that a jury would be swayed to convict Ebert based on the two videos and Z.N.'s testimony alone given that the record also contained (1) multiple images that Ebert took of H.H. when she *was* a minor, some of which depicted her without clothing and focused on her genitalia, and (2) H.H.'s detailed testimony of Ebert's interactions with her—the only minor victim of the charged offenses—over several years, which mirrored events Z.N. described. Thus, even were we to assume error, the admission of the challenged evidence was harmless on the record as a whole.

At bottom, the district court did not commit reversible error in admitting the challenged evidence, so this issue does not provide a basis for disturbing the judgment against Ebert.

16

C.

The final issue on appeal is whether the district court committed a procedural error in calculating Ebert's Guidelines range by including a five-level enhancement under § 4B1.5(b)(1). We find no error in the district court's decision.[6]

In conducting our review, "[w]e accord due deference to a district court's application of the sentencing guidelines." *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013). When, as here, "the issue turns primarily on a factual determination, an appellate court should apply the 'clearly erroneous' standard." *Id.* (citation omitted). "[C]lear error exists only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Slager*, 912 F.3d 224, 233 (4th Cir. 2019) (cleaned up).

Section 4B1.5(b) of the Guidelines enhances the offense levels of certain individuals convicted of sex offenses against a minor. It states, in relevant part:

> In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline

[6] Despite indicating its intent to challenge the district court's decision to impose a § 4B1.5(b) enhancement, Ebert's opening brief discusses and argues the district court clearly erred by imposing an enhancement under an entirely separate Guidelines provision that was not used—§ 2G2.2(b)(5). This error is no mere typo as Ebert quotes and builds his entire substantive argument around § 2G2.2(b)(5) despite the record's clarity on which enhancement had been applied and ruled on by the district court. We point out to counsel that this sloppiness does a disservice to both his client and the Court.

While a strong argument could be made that Ebert has waived his challenge to § 4B1.5's application, *see Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)), the Government fails to raise a waiver argument in its response brief. For that reason, and in view of the fact that in Ebert's opening brief the issue statement cites the correct Guidelines provision, we will not rest our decision on the principle of waiver.

17

applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct[,] . . . [t]he offense level shall be 5 plus the offense level determined under Chapters Two and Three.

U.S.S.G. § 4B1.5(b). The application notes define "pattern of activity" as occurring if the defendant "on at least two separate occasions . . . engaged in prohibited sexual conduct with a minor." *Id.* § 4B1.5 cmt. n.4(B)(i). It also indicates that "[a]n occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." *Id.* § 4B1.5 cmt. n.4(B)(ii).

At the sentencing hearing, the district court rejected Ebert's objection to the imposition of the enhancement, finding that the evidence supported the requisite "pattern of activity."[7] Ebert had urged the court not to rely on H.H.'s testimony, contending it was incredible and uncorroborated. In his view, after H.H.'s testimony was set aside, the only evidence of Ebert's qualifying conduct is the series of images that had been taken on a single occasion, such that they proved only one instance of relevant activity, not a pattern. The Government responded that a pattern had been readily shown, recounting Ebert possessing child pornography, touching H.H.'s breasts, asking H.H. to make a videorecording of herself masturbating, and attempting to have Z.N. do the same. The district court agreed with the Government's recitation of the record and found that the

---

[7] Two of the criteria are undisputed—that Ebert's conviction is a covered sex crime and that two other Guidelines provisions did not apply to him.

18

Government had "by [a] preponderance of the evidence shown at least three activities that make a pattern." J.A. 622.

The district court did not clearly err in finding a pattern of activity involving criminal sexual conduct. At the outset, Ebert does not challenge that the images supporting the child-pornography conviction (Count 3) support one qualifying occasion. His argument is that there's not a second occasion to establish the required pattern of activity.

Critical to his argument, Ebert has to discredit H.H.'s testimony, but he has not done so. For purposes of supporting a sentencing enhancement, witness testimony can be credited even without corroboration. Indeed, a district court's factual findings related to the credibility of a witness are given even greater deference than other findings. *E.g.*, *Slager*, 912 F.3d at 233 ("When a district court renders factual findings 'based on determinations regarding the credibility of witnesses, we give even greater deference to the trial court's findings.'" (citation omitted)). In making its assessment of facts sufficient to support the finding of a pattern by a preponderance of the evidence, the district court was entitled to credit any relevant information that bore "sufficient indicia of reliability to support its probable accuracy." *United States v. Pineda*, 770 F.3d 313, 318 (4th Cir. 2014) (quoting U.S.S.G. § 6A1.3(a)). And, contrary to Ebert's sweeping assertions, those facts fairly included H.H.'s testimony against him at trial, during which she described many qualifying acts over the course of years. They include Ebert touching H.H.'s breasts, encouraging H.H. to take a videotape of herself masturbating, and photographing H.H. in the nude (in a manner that would satisfy the definition of child pornography) on occasions other than those depicted in the photographs entered into evidence.

19

Similarly unavailing is Ebert's contention on appeal that the district court could not rely on the challenged evidence (the videos of H.H. taken when she was eighteen and Z.N.'s testimony) to support a sentencing enhancement because doing so would violate the Federal Rules of Evidence. This argument fails for at least two reasons, one legal and one factual. First, as a matter of governing law, the "Rules of Evidence do not apply to sentencing," *Slager*, 912 F.3d at 235 n.4 (citing Fed. R. Evid. 1101(d)(3)); *cf. United States v. Carter*, 300 F.3d 415, 427 (4th Cir. 2002) (approving of the district court's reliance on hearsay when making the requisite factual findings at sentencing). Thus, to be reliable evidence to support a sentencing enhancement, evidence need not meet the standard for admission at trial. Second, and more fatal to Ebert's argument, is that there is no evidence the district court relied on the challenged evidence to support imposition of the § 4B1.5(b) enhancement. To the contrary, the court's findings were based on H.H.'s testimony about Ebert's interactions with her while she was a minor.

For all these reasons, we readily conclude that the district court did not clearly err in finding—by a preponderance of the evidence—that H.H.'s testimony provided the requisite second occasion of prohibited sexual conduct to show a pattern.

III.

For the reasons stated above, the judgment of the district court is

*AFFIRMED*.

20